OPINION of the Court, by
Judge Logan
—This is a contest under adverse claims to land, in which neither party being satisfied with the decree of the court below, both have appealed to this court.
B signed his claim to h, an aduir>. B ¡¡'^e foi ing entries,leav ,ng mfiptheirs; not°being res-ponfibleforthe ’ltlf* af[er af-theTnthncy ¾ B’s heirs does, not save the ⅛⅛r°™ °*I being iurvey. ed mtlme’
The fight of the complainants, who claim under the settlement and pre-emption of Jesse Benton, is controverted at the threshhold, upon the ground that those claims had not been surveyed within the period prescribed by law. . . ,
. . , The time for surveying entries in the general bad expired before Benton’s claim was surveyed ; but vvhe-ther the exception in the act in favor of infants, will ap ■ plv to the preseut case, demands examination.
The fact of infancy of some of the heirs of Benton, at the limitation of the general period of surveying, is not doubted; but whether the complainants have a right to the benefit of that infancy, is the point of douhi.
It will be understood that Benton had sold his interest in that claim long before the period of surveying had expired. As early as the year 1784, Thomas Hart, the ancestor of the complainants, wrote from Hagers-town, upon the subject of his land claims in Ktntu ky, in which he asserts his right by purchase to the settlement and pre-emption of Benton, And he alleges in his bill that he purchased from Benton “ all his claim,” paid the full consideration for, and obtained an assignment of the same, but that he has lost said writing : and charges moreover that Benton by a letter dated the 3d of September 178y, acknowledged the sale oí said claira to him.
The “ owners of entries” were by law required to have them surveyed by a given day, with the exception of infants, &c.
The question here presents itself, who was the real owner of the entries which had been made by Benton, when the time of surveying expired ? If the heirs of Benton were the owners, then, as they were infants, they were within the exceptional the law, and their right clearly preserved from forfeiture. But if Thomas Hart were the owner, he being of age, must share the fate common to others, who were not within the exception of the act, and who were presumed capable of managing their own business and protecting their rights from forfeiture.
That Hart purchased and obtained from Benton his settlement and pre-emption rights, is not doubted : and that neither of them expected from the contract any farther act on the part of Beaton towards the completion *422 of the title,.seems also evident. There is in truth, n& real contest between their heirs upon the subject. The. sale is not denied — the transfer not questioned.
But it is contended that entries to land were not as» signable by law ; and it is therefore inferred that the. right to survey still remained in the heirs of Benton.
Ail persons were by law authorised “ to assign or transfer warrants or certificates of survey for lands.’5 But the act does not expressly embrace the assignment of entries ; and whether they are within the reason and spirit of the law, is a question which may be proper for our examination.
In the first place, however, it will be assumed as a correct principle, that a right which by law is assignable, is not necessarily so by endorsement on the instrument itself i but that the right may be transferred by a separate instrument clearly expressing the contract between the parties. Such has been the decision of this court in relation to notes which by law were made assignable ; and it is believed instances may be found in which certificates of survey have been thus transferred, and the titles consummated thereon.
It remains next to inquire, whether the right founded upon entry only, could be transferred?
Upon the reason and policy of the lav/, there can be but little doubt. The object of the legislature was obviously to authorise the transfer of claims to land ; and when in advancement of this policy, it provided that warrants or certificates of survey might be assigned, it seemed necessarily to involve the right to transfer the claim at any intermediate stage. For the transfer of the right in a warrant, whether before or after the entry in virtue of it, would transfer to the assignee similar power over it ; for if the warrant were located, he might withdraw, and re enter the same : so ahat the same effect would be produced.
The law literally taken, does not embrace settlement rights until after they had been surveyed: for warrants were not required in the case of settlement entries.
The certificate of the court of commissioners operated, however, as the warrant upon which the claim should be entered. And yet,it cannot be presumed that the legislature intended to authorise the transfer of treasury claims merely, while settlements, to which a preference *423 was given, should beheld not transferrable previous to surveying.
A contrary understanding certainly prevailed, and under which the court of commissioners acted ; for it is believed there are many instances in which settlement and pre-emptions were granted by the commissioners to the assignees of claims •. and it is upon the reason and spirit of the law only tha't they granted such certificates. So this court, in the case of Greenup vs. Coburn, (Hughes Rep. 104,) decided upon an assigned entry without seeming to question the right to make such transfer.
If we consider the object of the lavv in giving farther time to infants to survey, and thereby saving their rights from forfeiture, a little rt flection will show that the right to survey in the present instance ought not be drawn from the situation of Benton’s heirs.
Were they responsible for the title to Hart or his representatives, no doubt could be entertained as to their right to survey ; but it is believed that such a conclusion is totally unwarranted, and that Benton’s heirs have no interest whatever in those claims : they had of course no inducement to cause surveys to be executed : their ancestor, if living, had none ; were he therefore still alive, and Hart’s heirs had been the infants at the proper time of surveying, it would surely be doing violence to the object of the law, to place their right upon the omission of Benton having no interest, and of consequence no inducement to preserve the claims from forfeiture by survey. And if in that case the right ought to exist in favor of the infant heirs, who were the real, not the nominal claimants, they ought not to be permitted to redeem the loss consequent on the neglect of their ancestor, through the minority and privilege of those having no real interest therein. It is indirectly evading the law. Considering, however, that the right to these claims, from the complainants’ own shewing, had been transferred from the ancestor of those infants, and vested elsewhere, it would seem not difficult to determine that it cannot be from a regard to the preservation of their rights that this case is to be arrested from the fate of other claims lost through the neglect of the true owners.
We are therefore of opinion that the complainants bill aught to have been dismissed with costs.